UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. SCOTT,

       Plaintiff,

v.                                                                          Case No. 5:02-cv-177
                                                                                                        HON. R. ALLAN EDGAR

JOHN LANG, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       Plaintiff David J. Scott, a prisoner at Marquette Branch Prison, filed this civil rights action pursuant to 42 U.S.C. § 1983 asserting claims of retaliation, conspiracy and malicious prosecution against defendants Brooks Correctional Facility Inspector John Lang, Chippewa Correctional Facility Counselor George Babik, and Michigan Department of Corrections Regional Prison Administrator Richard Johnson. Plaintiff failed to serve defendant Lang with a summons and complaint.

       On July 7, 1999, defendant Babik conducted an administrative hearing concerning confiscated property, including plaintiff's word processor, computer disks, and cassette tapes, which were deemed as contraband. After the property was confiscated, plaintiff received a notice of intent to conduct an administrative hearing to determine the ownership of the property. According to defendant Babik, plaintiff refused to attend the hearing or to produce documentary evidence to support his claim that he was the owner of the property. Plaintiff claims that he did attend the hearing and that he did produce documentary evidence establishing his ownership of the property. A November 3, 1999, memorandum written by URF Acting Inspector Roger Jacobson indicated that

"[d]uring the hearings the prisoner was repeatedly asked to provide receipts proving purchase."

Exhibit 2 to plaintiff's response brief. The memorandum further states:

> The results of the hearing conducted by ARUS Babik showed that on two separate occasions in the past the prisoner attempted to get in an illegal typewriter, a Star 80 word processor at KTF and an unnamed brand one at KCF . . . . Apparently on the third try the prisoner was successful but could produce nothing for the property he had to prove ownership. Copies of the prisoner's account records back to 1992, in an attempted to verify that the prisoner was in compliance with 04.07.112 and that he purchased the items in question. The record show that he received less than $100 in that time frame but had accumulated an institutional debt in excess of $3,000 for postage, copies, footlockers, etc. . . .
>
> Throughout the whole discovery process, it appeared evident that the prisoner had not received enough money to purchase the property he had. The Smith Corona typewriter had been sent out to Kentwood for repair under warranty. When Kentwood was contacted they stated that they would only repair a typewriter if authorized by the manufacturer and would not supply a refurbished typewriter in place of the one to be repaired. There was also a hearing on a receipt from Kentwood for a typewriter, that deemed the receipt forged. . . .

Therefore, it appears that there was more than one hearing on this issue. Ultimately, defendant Babik upheld the confiscation because he believed plaintiff failed to show ownership of the property. Plaintiff filed a written complaint with the Michigan State Police on September 3, 1999, seeking a criminal investigation and prosecution of defendant Babik for theft of property. Plaintiff asserted that defendant Babik concealed the fact that Babik received notice that plaintiff had a receipt for the word processor. The matter was investigated by MDOC Internal Affairs. The complaint was dismissed as unfounded. As a result, on December 3, 1999, defendant Johnson recommended that plaintiff receive a misconduct ticket for filing a false complaint with the Michigan State Police. Plaintiff was found not guilty of the misconduct ticket.

Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff failed to show that he exhausted his grievance remedies on his retaliation claim. Defendants claim that while plaintiff did exhaust his grievances regarding the confiscation of the word processor which is the subject matter of a different lawsuit, plaintiff never submitted a grievance against defendants regarding the misconduct that he received for Interference with the Administration of Rules.

Plaintiff alleged in his complaint that he was on modified access to the grievance process and submitted a proposed grievance to the grievance coordinator that was never answered.

Defendant argues that those allegations are not enough to show exhaustion. In plaintiff's responsive pleading, plaintiff attached as exhibits a document showing that he was on a grievance restriction and a letter he wrote containing his proposed grievance. Defendants argue that it is now too late to show exhaustion because plaintiff cannot amend his complaint to show exhaustion.

Plaintiff satisfied his burden of showing exhaustion in his complaint by making specific allegations regarding the steps he took to exhaust his grievance remedies. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ II. (effective April 28, 2003). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ LL. Plaintiff has shown that he requested to file a grievance and that his grievance request was never answered. Contrary to defendants' argument, plaintiff has not asked to amend his complaint to plead allegations of exhaustion. Plaintiff's complaint already contained sufficient allegations to show exhaustion of his grievance remedies.

Defendants argue that plaintiff has failed to support his claim for retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

This case is factually similar to *Brown v. Crowley*, 312 F.2d 782 (6th Cir. 2003). In *Brown*, the prisoner was forced to pay prison debts that he claimed were already paid. Brown filed grievances that were denied on the issue. Brown wrote to the Michigan State Police requesting an investigation. The MDOC Internal Affairs Department investigated the complaint and determined that Brown's claim lacked merit. Defendant Richard Johnson, as he did in this case, recommended that Brown receive a misconduct ticket for interference with administration of rules. Brown was found not guilty of the charge. He filed a complaint in federal court asserting retaliation. The Sixth Circuit held that plaintiff submitted sufficient factual allegations to defeat summary judgment reversing the District Court's dismissal of the case. In *Brown* the defendants conceded that the complaint to the Michigan State Police was protected conduct. The court found that the plaintiff was subjected to adverse action because the mere issuance of a major misconduct ticket subjected him to significant sanctions. The fact that plaintiff was found not guilty and not subjected to loss of privileges did not relieve the defendant from liability for retaliation under the adverse action element. The court found that the third element, a causal connection between the protected conduct and the adverse action, was satisfied because defendant Johnson sent a memorandum to the Warden directly linking the major misconduct charge to Brown's protected conduct.

Similarly, in this case, the filing of the complaint with the Michigan State Police was protected conduct. The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. See *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Defendant argues that filing a false complaint with the Michigan State Police is not protected conduct. Defendant has failed to establish that plaintiff's complaint was false. The hearings officer determined that no evidence existed to show that the complaint to the Michigan State Police was false or that plaintiff knowingly submitted a false complaint to the Michigan State Police. Further, plaintiff was subjected to adverse action because he was faced with possible loss of privileges if found guilty of the misconduct. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002). Finally, as in *Brown*, defendant Johnson's memorandum clearly linked the major misconduct to plaintiff's complaint to the Michigan State Police. Similarly, this court has already determined that plaintiff presented sufficient factual evidence which could show that defendant Babik was personally involved in the alleged retaliatory action. In accordance with *Brown*, plaintiff has clearly supported his retaliation claim.

Defendants assert that they are entitled to qualified immunity from liability. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157,

160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. See also *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), cert. denied, 520 U.S. 1157 (1997). The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). See also *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983

even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), cert. denied sub nom, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal pursuant to Rules 12(b)(6) or 56. See *Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991). In the Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676 (1987). However, once the affirmative defense is raised, plaintiff must come forward with such additional facts as would establish the requisite state of mind). *Id.*

Defendants argue that *Brown* was not clearly established law at the time the alleged retaliatory acts took place. In *Brown*, the Sixth Circuit did not reach the qualified immunity issue. The dissenting opinion concluded that qualified immunity would certainly be given to defendants on remand. The issue was never decided in that case. Defendants also rely upon another case filed

by this plaintiff, *Scott v. Churchill,* 377 F.3d 565 (6th Cir. 2004), as authority to show that qualified immunity is applicable to the facts in this case. The Sixth Circuit rejected the defendant's claim that *Brown* was the first warning that the defendant's actions involving the filing of a misconduct ticket could be considered unconstitutional retaliation. That case involved acts by defendant which predated *Thaddeus-X* and *Brown.* The court distinguished the facts in *Brown* by concluding that "Bair deliberately framed Scott through false testimony, and that Bair did so with the specific intent of deterring Scott from asserting his First Amendment rights of grievance." *Scott* at 572. Moreover, the Sixth Circuit analyzed the case under principles of retaliation law applied by courts prior to the *Thaddeus-X* decision. Here plaintiff has established facts which could show defendants retaliated against him as set forth in *Thaddeus-X*. At the time that defendants decided to issue plaintiff a misconduct ticket for filing a complaint, *Thaddeus-X* was clearly established law in this Circuit. Moreover, as in the first *Scott* decision, plaintiff has presented some evidence which could establish that defendants deliberately filed a false misconduct ticket against plaintiff. A question of fact exists whether defendants retaliated against plaintiff. Accordingly, in the opinion of the undersigned, defendants are not entitled to qualified immunity.

It is recommended that defendants' motion for summary judgment (docket #167) be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 10, 2005